Coburn *v.* Hough.

## THADDEUS H. COBURN
### *v.*
## DAVID L. HOUGH.

1. PAYMENT — *upon condition* — *its effect.* A party who had executed his note for a balance of purchase-money of land which he had purchased from the payee, and upon which he had also given a mortgage to secure the payment of the note, placed in a bank at which the note was made payable, a sum of money for its payment when the note should be received at the bank, but with instructions to the bank to retain the money until it should be ascertained that proper authority was given to cancel the mortgage, and that the title to the land was perfect. The title being found defective, the payee was advised, who set about supplying the deficiency, but before this was accomplished the note was transferred to another party, who filed his bill for a foreclosure. It was *held*, the payment was conditional, not absolute, and was no bar to the foreclosure.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

On the 31st day of March, 1859, David L. Hough instituted his suit in chancery in the court below, for the foreclosure of a mortgage upon certain premises in La Salle county, executed and delivered by Thaddeus H. Coburn, on the 29th of November, 1854, to William F. Kent, to secure the payment of the following promissory note :

"$350.                    OTTAWA, November 29th, 1854.

" One year after date I promise to pay William F. Kent, or order, at the Bank of Ottawa, three hundred and fifty dollars, value received, with interest at six per cent. per annum.

" THADDEUS H. COBURN."

The note had been duly assigned, in blank, by Kent, the payee, and by Preston, a subsequent holder, and thus came to the hands of the complainant.

The defendant, Coburn, answered that he bought the land described in the mortgage, of Kent, for $850, and paid $500 cash. The said note and mortgage for the balance. That the amount of said note was paid by defendant into the Bank of Ottawa before the note became due, and that, soon after, said note was received for collection by said bank, and said money deposited by defendant was thus applied to the payment thereof, and that said note and mortgage were afterwards wrongfully and by mistake delivered to said Kent.

A general replication being filed, the cause came on for hearing. The complainant read in evidence the note and mortgage. The defendant then read the deposition of George S. Fisher, who stated that he was the owner and cashier of the Bank of Ottawa, during the years 1854–5 and 6, and superintended its principal business. That on the 28th day of December, 1855, a note signed Thaddeus H. Coburn was received by the Bank of Ottawa for collection, from D. Preston, St. Louis, Missouri. The note was for three hundred and fifty dollars, or thereabouts, and payable to William F. Kent, or order, with interest at six per cent. per annum. The date of the note he did not know.

In answer to the question, whether Coburn paid into the Bank of Ottawa any money to apply on that note, the witness said: "On or about the 22d November, 1855, Mr. Coburn called on me in my office, and left with me three hundred and seventy-one ($371) dollars, to pay the above note when it should be sent, *provided* it was accompanied with proper authority to cancel the mortgage the note was secured by, and all the title papers were then correct, and a perfect chain of title given him by said Kent, of the lands on which the mortgage was given to secure the payment of the note, and for which that was the remainder in full of the consideration to be paid for the same by Coburn to Kent, but to retain the money, if I could do so, until the title was perfect. The

44

money was credited to Mr. Kent in collection account and the note put away for Mr. Coburn, and at the same time an examination made of the title. After the examination of the title was made, within a day or two of the 1st January, 1856, as I now remember, the title was found defective, and Mr. Kent at once advised that the money was paid to his credit, but held, by request, until the mortgage was duly canceled and the title made perfect. To this procedure Mr. Kent made no objection, but assented to it, and set himself at once about finding a Mr. Coulter, from whom a quit-claim deed was wanting to make the title perfect and take up his money."

In answer to another question, as to what was done with the note and mortgage by the bank, and in what way they were taken from the bank, the witness stated: "The note and mortgage were put away, when the money was transferred to Mr. Kent's credit, in a pigeon hole, for Mr. Coburn; and while I was absent from home, in the summer of 1857, I believe sometime in August or September of 1857, some one, and I believe it was David L. Hough, as agent of Mr. Kent, called on my clerk, Mr. Thomas R. Courtney, and received from him the note and mortgage, he, Mr. Courtney, not then remembering the arrangement made to retain all papers for the separate parties until the title was made straight, though he found the said note and mortgage under pigeon hole ' C,' where they had been placed for Mr. Coburn, the money for the payment of the same having been placed to Mr. Kent's credit on collection account as before stated."

Upon cross-examination, the witness testified, that the money was left at the bank by Coburn, specially to pay the note mentioned, and liquidate it for him; and it did so as the witness understood it. But Coburn's special request was, not to forward the money, or let it pass out of witness' hands, until the mortgage was duly canceled and the chain of title perfect from Kent to him.

Upon this evidence the court rendered a decree of foreclosure. The defendant below thereupon sued out this writ of error. The only question arising upon the record, is, whether

the paying of the money into the bank, was, under the circumstances, a payment of the note.

Messrs. GLOVER, COOK and CAMPBELL, for the plaintiff in error.

Messrs. G. S. ELDRIDGE and E. F. BULL, for the defendant in error.

Mr. CHIEF JUSTICE CATON delivered the opinion of the Court:

The question in this case is, whether the money paid by Coburn into the Bank of Ottawa, where the note was payable and had been left for collection, was a payment and satisfaction of the note. This is the testimony of Fisher on that point: " On or about the 22d November, 1855, Mr. Coburn called on me in my office, and left with me three hundred and seventy-one ($371) dollars, to pay the above note when it should be sent, *provided* it was accompanied with proper authority to cancel the mortgage the note was secured by, and all the title papers were then correct, and a perfect chain of title given him by said Kent, of the lands on which the mortgage was given to secure the payment of the note, and for which that was the remainder in full of the consideration to be paid for the same by Coburn to Kent, but to retain the money, if I could do so, until the title was perfect. The money was credited to Mr. Kent, in collection account, and the note put away for Mr. Coburn, and at the same time an examination made of the title. After the examination of the title was made, within a day or two of the 1st January, 1856, as I now remember, the title was found defective, and Mr. Kent at once advised that the money was paid to his credit, but held, by request, until the mortgage was duly canceled and the title made perfect. To this procedure Mr. Kent made no objection, but assented to it, and set himself at once about finding a Mr. Coulter, from whom a quit-claim deed was wanting to make the title perfect and take up his money." This was a conditional, and not an absolute, payment. Mr. Fisher was instructed to apply the

money to the payment of the note, only in the event he should find the title clear and perfect, which contingency never happened, so that Fisher was never authorized to apply the money in payment of the note. Fisher always continued the debtor of Coburn for the money, as he was never authorized to pay it to any one else. If he passed it to the credit of Kent on the books of the bank, that was conditional on his perfecting the title, which it does not appear was ever done, at least, till after the bank failed. Of this conditional credit, Fisher informed Kent, at the time he informed him of the deposit, so that, in fact, the money was never subject to the order of Kent, nor did he, at any time, ever have a cause of·action against the bank for it. The note was never paid, and the judgment must be affirmed.

*Judgment affirmed.*